STATE of Missouri, Respondent,

v.

Shane A. VORHEES, Appellant.

No. SC 88553.

Supreme Court of Missouri,
En Banc.

Feb. 19, 2008.

Rehearing Denied April 15, 2008.

Ellen H. Flottman, Office of the Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Shaun J. Mackelprang, Assistant Attorneys General, Jefferson City, MO, for Respondent.

MICHAEL A. WOLFF, Judge.

### Introduction

The question presented here is whether evidence of other, uncharged offenses can be admitted in a criminal trial—not to establish the identity of the offender but to corroborate the testimony of the alleged victim that the offense occurred.

This Court in *State v. Ellison* held that section 566.025 [1], which authorized such evidence, is unconstitutional, on the grounds that evidence of uncharged crimes deprives the defendant of the right to be tried only on the crime charged. 239 S.W.3d 603 (2007). "Evidence of a defendant's prior criminal acts," this Court said, "when admitted purely to demonstrate the defendant's criminal propensity, violates one of the constitutional protections vital to the integrity of our criminal justice system."

The state relies upon section 566.025 and upon a "signature *modus operandi* exception" to the general rule that evidence of prior uncharged crimes is inadmissible.[2] Because this Court invalidated section 566.025 in *Ellison*, the only remaining issue of law in the present case is whether the trial court's admission of the evidence can be upheld, without violating the Missouri Constitution, under a "signature *modus operandi* exception" solely to corroborate the testimony of the alleged victim.

### Facts and Procedural History

S.W. testified that her stepfather, Shane Vorhees, repeatedly assaulted her sexually for a two-year period beginning when she was 13 years old. She testified that during the assaults, Vorhees would use his saliva as a lubricant by spitting on his hand, rubbing his penis and then placing his penis in S.W.'s anus or vagina. Once, Vorhees placed his penis in her mouth and urinated. At other times, Vorhees would place his penis in S.W.'s mouth and ejaculate. After S.W. told her mother about her husband, Shane Vorhees's, conduct, Vorhees was indicted for first-degree statutory rape and first-degree statutory sodomy. He was tried, found guilty and sentenced.

---

1. All references are to RSMo 2000. Section 566.025 provides: "In prosecutions pursuant to this chapter [566] or chapter 568, RSMo, of a sexual nature involving a victim under fourteen years of age, whether or not age is an element of the crime for which the defendant is on trial, evidence that the defendant has committed other charged or ·uncharged crimes of a sexual nature involving victims under fourteen years of age shall be admissible for the purpose of showing the propensity of the defendant to commit the crime or crimes with which he or she is charged unless the trial court finds that the probative value of such evidence is outweighed by the prejudicial effect."

2. The Latin phrase *modus operandi* means "method of operating or doing things." BLACK'S LAW DICTIONARY 906 (5th ed.1979).

The issue in this appeal is whether the trial court properly admitted evidence of other uncharged sexual conduct with another minor to help prove that Vorhees committed the offenses in this case.

Prior to trial, the state made a motion to admit the testimony of witnesses who would provide evidence that the defendant had committed other charged or uncharged crimes of a sexual nature involving victims under 14 years of age. The trial court suspended ruling pending an offer of proof by the state that the probative value of the evidence outweighed its prejudicial effect. The state filed a second motion to admit the testimony of witnesses pursuant to section 566.025, this time naming J.W. and N.W. (the mother of J.W.) as witnesses who would testify that J.W. was the victim of prior uncharged sexual abuse by Vorhees.

At a pretrial hearing, J.W. testified that when she was six years old, her family lived in a trailer park. J.W. lived near Vorhees' trailer, and Vorhees would often visit J.W.'s trailer. J.W. described an incident in which Vorhees entered her bedroom and restrained her. Vorhees, she said, then spit on his hand, using the saliva as a lubricant, and attempted to insert his penis in J.W.'s vagina. Vorhees then urinated in J.W.'s mouth. The state moved to admit J.W.'s testimony under both section 566.025 and the "signature *modus operandi*" exception to the general ban on evidence of prior bad acts. The trial court allowed the testimony at trial, finding that the similarities between the allegations made by S.W. and the events described by J.W. rendered her testimony more probative than prejudicial, in accordance with

section 566.025. The trial court, though it used the statutory criteria, did not specify under which of the state's suggested theories—signature *modus operandi* or section 566.025—it was sustaining the motion to admit the testimony. Vorhees filed a pretrial motion asking the court to declare section 566.025 unconstitutional, which was overruled. Vorhees also objected to the constitutionality of section 566.025 during J.W.'s trial testimony and to the potentially prejudicial effect of the testimony.

The jury returned a verdict of guilty on both counts, and the trial judge sentenced Vorhees to two consecutive terms of imprisonment of thirty years.

Vorhees appeals the constitutionality of both section 566.025 and the use of the signature *modus operandi* exception to corroborate an alleged victim's testimony.[3]

### Constitutional Principles

■■■ The "well-established general rule" concerning the admission of evidence of prior criminal acts "is that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954). The rationale underlying this rule is grounded in the view that "[e]vidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted." *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992) (internal citation omitted). This right arises from the guarantee of article I, sections 17 and 18(a) of the Missouri Constitution that a defendant has the right to be tried only on the offense

---

**3.** In the alternative, Vorhees argues that the trial court abused its discretion in admitting evidence of Vorhees's prior uncharged criminal acts because such evidence, he says, was more prejudicial than probative. This argument, based on the probative-prejudice balancing test in section 566.025, need not be addressed because this Court in *Ellison* struck down section 566.025.

charged. *State v. Burns*, 978 S.W.2d 759, 760 (Mo. banc 1998). Article I, section 17 provides that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information." Article I, section 18(a) states "[t]hat in criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation...."

■ There are a number of exceptions to the general ban on evidence of prior criminal acts. These exceptions "are as well established as the rule itself" and include: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other than proof of one tends to establish the other; and (5) the identity of the person charged with the commission of the crime on trial. *Sladek*, 835 S.W.2d at 311. Evidence of prior bad acts is also "admissible if offered to rebut the [defendant's] volunteered assertions from the stand that he or she has never been guilty of any misconduct." John O'Brien, Missouri Law of Evidence (4th ed.2002) (citing *State v. Whitt*, 592 S.W.2d 316, 317 (Mo. App.1979)). However, this exception for purposes of impeachment becomes potentially relevant only if the defendant chooses to testify, which Vorhees did not.

In addition to these "well-established" exceptions, the signature *modus operandi* exception, for corroboration, has emerged in this Court's jurisprudence as an exception to the general rule banning the admission of evidence of prior criminal acts. The signature *modus operandi* exception was first discussed by Judge Thomas in his concurring opinion in *State v. Sladek*, 835 S.W.2d at 316–18. Judge Thomas provided a general description of the requirements for signature *modus operandi* evidence of prior crimes, stating that such evidence would be admissible "to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." *Sladek*, 835 S.W.2d at 316 (citing *State v. Koster*, 684 S.W.2d 488, 491 (Mo.App. 1984)) (internal citation omitted). Judge Thomas conceived of two forms of the signature *modus operandi* exception; one, as a derivative of the identity exception, and the other, which Judge Thomas called "signature modus operandi/corroboration." *Sladek*, 835 S.W.2d at 316. Since there is no issue as to Vorhees' identity, it is the signature *modus operandi* corroboration exception that is at issue in the present case.

The classic example of the signature *modus operandi* identity exception discussed by Judge Thomas is the case of *Jones v. State*, 460 So.2d 1384 (Ala.Cr.App.1984). In *Jones*, the defendant was charged with leading his victim into an empty barn, where the victim was robbed at gunpoint by a second man who used a "long-barreled pistol" and wore a Halloween mask and a black wig. *Sladek*, 835 S.W.2d at 315–16 (citing *Jones v. State*, 460 So.2d 1384 (Ala.Cr.App.1984)). The court allowed testimony from a criminal investigator who testified that two weeks after the first robbery, he and another investigator went to a farm and posed as cattle buyers. *Id.* The investigator was met by the defendant, who took him to a barn where the investigator was robbed at gunpoint by a man holding a long-barreled pistol and wearing a Halloween mask and a black wig. *Id.* The signature *modus operandi* identity exception was used to admit the evidence of the second offense in order to connect the identity of the defendant with

the identity of the perpetrator of the nearly-identical charged offense. *Id.* In *Jones,* the defendant did not dispute whether or not the crime had occurred, but rather, whether he was the person who had perpetrated the crime. Evidence of the uncharged offense was relevant to establish the defendant's identity.

The signature *modus operandi* identity exception is simply a more specific form of the already established identity exception. Under the signature *modus operandi* identity exception, evidence of the defendant's prior criminal acts is not offered to prove his propensity to commit the charged offense. Instead, the prior acts are offered to establish the identity of the defendant as the perpetrator of the charged criminal act.

This identity exception has no bearing on the case at hand because J.W.'s testimony was not offered to establish Vorhees's identity, but instead to corroborate the testimony of the alleged victim in the charged case, S.W. It is the constitutionality of the signature *modus operandi* corroboration exception that this decision addresses.

In cases where the signature *modus operandi* corroboration exception is used, the defendant does not dispute the purported victim's identification of the alleged perpetrator, but instead disputes whether or not a crime was actually committed. Evidence of highly similar prior criminal acts perpetrated by the defendant is offered, not to establish the identity of the perpetrator, but instead to corroborate the testimony of the alleged victim in the charged case. The logic behind this exception is that if a defendant committed a very similar crime previously, it is much more likely that the subsequent victim is telling the truth regarding the defendant's conduct in the charged case. Judge Thomas's proposed signature *modus operandi* corroboration exception was adopted by this Court in *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993), though Judge Thomas himself changed his mind and thought such evidence inadmissible: "Having now considered that proposition further, I now conclude that the rationale and reasoning involved in a signature crimes/identity case is entirely different from that involved in a signature crimes/corroboration case," Judge Thomas wrote. "While the presence of a signature crime does add increased probative value on the identity issue, the fact that it is a signature crime that is unusual and unique really adds nothing to the probative value of such evidence where the issue is whether the defendant did what the victim claims he did." 849 S.W.2d at 26. The Court's majority, though in effect acknowledging the defect noted by Judge Thomas, deemed "evidence of prior sexual misconduct that corroborates the testimony of the victim" admissible through the signature *modus operandi* corroboration exception, provided that such evidence is "nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's *modus operandi.*" *Bernard,* 849 S.W.2d 10, 17 (Mo. banc 1993).

Under the signature *modus operandi* corroboration exception, this Court in *State v. Gilyard,* upheld the trial court's admission of testimony concerning the defendant's prior criminal acts and affirmed the defendant's conviction for forcible rape and false imprisonment. 979 S.W.2d 138 (Mo. banc 1998). This Court found that the record showed "a remarkably consistent pattern of sexual assaults that include[d] demanding sex and enforcing those demands through the unusual and distinctive means of biting the victims on the cheek." *Gilyard,* 979 S.W.2d at 142. The *Gilyard* defendant did not argue that the victim had misidentified him; instead,

the defendant argued that the acts of sexual intercourse underlying the charged offense had been consensual. *Id.* at 140. Explaining its application of the signature corroboration exception, this Court stated that "[i]n a rape case, corroborative evidence can be highly probative of victim credibility and may even be essential, such as where the victim's testimony is unconvincing or contradictory." *Id.* at 141.

*State v. Ellison*, however, re-affirmed the unconstitutionality of admitting evidence of prior crimes to show propensity to commit a particular offense. In this case, the trial court made a finding—in accordance with section 566.025, which this Court struck down in *Ellison*—that the probative value of the evidence outweighed its prejudicial effect. The trial court made no finding that the behavior of Vorhees as reported by the proposed corroborating witness was so unusual and distinctive as to brand it as the "signature" of the defendant Vorhees.

The problem, however, is not in the trial court's failure to find the behavior unusual and distinctive so as to constitute a "signature." Signature evidence used for corroboration is, at base, propensity evidence masquerading under the well-recognized identity exception, a category of exception in which it does not belong.

Even in his initial proposal of the corroboration exception, Judge Thomas expressed his serious reservations, saying "[a]lthough we have called this exception corroboration, it really involves reasoning from the signature modus operandi based upon the propensity of the defendant to commit this type of crime to the conclusion that the defendant committed the crime charged. This reasoning goes *squarely against* the rationale for the general rule." *Sladek*, 835 S.W.2d at 317 (emphasis added). Judge Thomas went on to assert that because of the hazards of violating the ban on propensity evidence through use of the signature *modus operandi* exception, it is "particularly important that the requirement for a signature modus operandi be strictly enforced." *Id.* The "requirement" to which Thomas refers is the need for the *modus operandi* of the criminal acts to be "carried out in an unusual and special way that has distinguishing characteristics that make it unique to a certain person." *Id.*

Judge Thomas's initial reservation concerning the signature corroboration exception is well-founded. Essentially, by stressing the stringency of the "uniqueness" requirement, Thomas argued that if evidence of prior crimes is *extremely* probative, such evidence should fall under an additional exception to the propensity evidence rule. The presence or absence of probative value, a criterion of section 566.025, cannot redeem the admissibility of propensity evidence, as this Court held in striking down that section in *Ellison*, 239 S.W.3d at 607–08.

By admitting the prior act evidence, the court is reasoning that if the defendant committed a very similar crime once before, it is more likely that he committed the same crime on a subsequent occasion. This reasoning, as Judge Thomas warned, undermines the general rule banning propensity evidence. Adding in the additional analytical step of saying that because the defendant acted in a particular way once before, it makes it more likely that the current victim is telling the truth about the defendant's conduct in the current case, does not alter the logic of the underlying rationale. This reasoning relies on the distinction between admitting evidence of prior criminal acts for the purpose of showing that a defendant committed a crime and admitting the evidence to show that the victim is telling the truth when she says the defendant committed the

crime. This distinction is too fine to support a constitutionally-dubious evidentiary exception.

 In his concurrence in *State v. Sladek*, Judge Thomas observed that evidence of prior bad acts possesses logical relevance. Thomas wrote that "[e]vidence is 'logically relevant' if such evidence tends to make the existence of any material fact more or less probable than it would be without the evidence. This is a very low-level test that is easily met. Crime statistics readily demonstrate that commission of a prior crime by a defendant is logically relevant to the issue of whether the defendant committed the crime charged simply because recidivous statistics demonstrate that prior offenders commit more crimes than persons who have not previously committed a crime." 835 S.W.2d at 314. However, the legal or logical relevance of signature *modus operandi* evidence has *absolutely no* bearing on its admissibility. "The criteria of logical and legal relevance are not intended as a loophole for evading the general ban on propensity evidence. A finding of legal and logical relevance will *never* provide a basis for the admission of prior criminal acts evidence for the purpose of demonstrating a defendant's propensity." *Ellison*, 239 S.W.3d at 607. Propensity evidence, although logically relevant, is unconstitutional because it "violates [the] defendant's right to be tried for the offense for which he is indicted." *Sladek*, 835 S.W.2d at 311. Because signature *modus operandi* evidence is actually just propensity evidence by another name, the legal or logical relevance of such evidence is irrelevant to its admissibility.

 Despite the subjective and sometimes problem-ridden nature of victim testimony in rape cases, the perceived need for corroborative evidence does not justify abrogating the constitutionally-protected right of a defendant to be tried solely on the offense charged.

 Evidence of prior bad acts, regardless of the degree of their similarity to the acts in the charged case, may not be admitted to *corroborate* victim testimony. Should evidence of those prior acts be admissible under an already-established exception, such as motive, common scheme or plan, identity, the absence of mistake or accident, or for impeachment, then the admission of that evidence does not offend the constitution. *See, generally, Sladek*, 835 S.W.2d at 311 (discussing the five exceptions in the context of a defendant's constitutional right to be tried for the offense for which he is indicted). The state did not put forth any such legitimate purpose for the prior acts testimony offered in this case.

In invalidating the signature *modus operandi* corroboration exception, this Court acts in conformity with the Federal Rules of Evidence governing corroborative evidence. Professor Imwinkelried, in his treatise *Uncharged Misconduct Evidence*, explains that "[c]orroborating evidence is merely evidence that confirms other evidence of a fact. . . . Any similar uncharged act generally corroborates in the sense that the act shows the defendant's propensity toward that type of crime and thereby increases the likelihood that the defendant committed the charged act. But that is precisely the theory of logical relevance forbidden by Rule 404(b) [the federal prohibition against other crimes evidence]. That 'corroborative' use of uncharged misconduct would be a patent violation of Rule 404(b). If 'corroboration' were a separate 'exception' to the exclusionary rule, that exception would swallow the rule." Imwinkelried at section 6:05 (1996).

This Court's decision also is consistent with the law of most other states. The vast majority of states do not recognize a

signature *modus operandi* corroboration exception. Missouri's corroboration exception was far more liberal even than that recognized by a very small minority of states.[4] In invalidating the signature *modus operandi* corroboration exception, Missouri brings its law in line with the federal and majoritarian state view and with its own constitutional principles.

### Conclusion

The trial court erred in admitting evidence that on a prior occasion Vorhees committed a sexual offense with a minor that was similar to the charged offense. When offered to corroborate an alleged victim's testimony, evidence of a signature *modus operandi*—like the propensity evidence in *Ellison* and its precedent cases—violates the Missouri constitution's guarantee that a defendant will be tried only for the crime charged.[5]

The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

STITH, C.J., TEITELMAN, LIMBAUGH, RUSSELL and BRECKENRIDGE, JJ., concur.

PRICE, J., dissents in separate opinion filed.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I dissent. I would not overrule *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993). Neither would I overrule *State v. Gilyard,*

979 S.W.2d 138 (Mo. banc 1998). As Judge Holstein wrote in *Gilyard,*

> . . . when two or more victims independently report the same distinctive acts during or preliminary to separate sexual assaults by a defendant, the earlier acts are probative of the veracity of the last victim. *Bernard,* 849 S.W.2d at 17. The more unusual and distinctive the act, the higher the probative value of the act in corroborating the last victim's testimony.

979 S.W.2d at 141. Defendant's actions here, as described in the majority opinion, were sufficiently distinctive to warrant their probative value and, in turn, their admissibility. I would affirm the judgment of the trial court.

---

4. Examples include *State v. Phillips,* 328 N.C. 1, 399 S.E.2d 293 (1991), *State v. Damewood,* 245 Kan. 676, 783 P.2d 1249 (1989); *State v. Cox,* 169 P.3d 806 (Utah App.2007), *State v. Spaulding,* 313 N.W.2d 878 (Iowa 1981), *People v. Donoho,* 204 Ill.2d 159, 273 Ill.Dec. 116, 788 N.E.2d 707 (2003), *Sandy v. State,* 870 P.2d 352, 357–58 (Wyo.1994) and *State v. Fears,* 69 Or.App. 606, 688 P.2d 88 (1984). All of these are distinguishable from this

Court's holding here, except *Donoho* and *Spaulding,* which conflict with this Court's decision in *Ellison.*

5. To the extent that *Bernard* and *Gilyard* conflict with the holding of this case regarding the use of evidence of prior bad acts to corroborate testimony of an alleged victim, they should not be followed.