STATE of Missouri, Plaintiff–
Respondent,

v.

Amber W. LIGHT, Defendant–
Appellant.

No. SD 32360.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 27, 2013.

Margaret M. Johnston, Columbia, MO, for Appellant.

Rizwan Ahad, West Plains, MO, for Respondent.

DON E. BURRELL, J.

Amber W. Light ("Defendant") appeals the judgment convicting her of third-degree assault after a bench trial. *See* section 565.070.[1] Her single point claims there was "insufficient evidence that [Defendant] 'recklessly' caused physical injury" to the victim. Finding no merit in the claim, we affirm.

### Applicable Principles of Review and Governing Law

Our review of the sufficiency of the evidence in a court-tried case is the same as that used for a jury-tried case. *State v. Mann,* 129 S.W.3d 462, 465 (Mo. App. S.D.2004). We must determine "whether there is sufficient evidence from which a reasonable trier-of-fact might have found [Defendant] guilty beyond a reasonable doubt." *Id.* "Our function is not to reweigh the evidence, but only to determine whether the conviction is supported by sufficient evidence." *State v. Rousselo,* 386 S.W.3d 919, 921 (Mo.App. S.D.2012).

As relevant here, "[a] person commits the crime of assault in the third degree if" he or she "attempts to cause or recklessly causes physical injury to another person[.]" Section 565.070.1(1). Section 562.016.4 provides that "[a] person 'acts **recklessly'** or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

### Facts

On August 23, 2011, Defendant was being detained in the emergency room at Ozarks Medical Center ("hospital") while a "96–hour hold" was being sought.[2] Defendant was taken to hospital by her mother and aunt, who executed an affidavit stating that Defendant had attempted to harm herself by jumping out of a moving vehicle. While Defendant's mother and aunt were completing the paperwork necessary for the hold, hospital security officer James Hanvelt was monitoring Defendant. When Defendant tried to leave her room, Officer Hanvelt intercepted her and told her that she had to stay. Defendant responded to that news by drawing her hand back in a threatening manner, and Officer Hanvelt "took her down to the floor." With the assistance of other hospital personnel, Officer Hanvelt returned Defendant to her room.

---

1. The trial court imposed a ten-day jail sentence and suspended its execution. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. Upon proper application, a mental health facility is authorized, for a period not to exceed ninety-six hours, to detain for evaluation and treatment an individual, suffering from a mental disorder, who presents a likelihood of serious harm to his or her person or to others. Section 632.305.

Defendant continued to resist her detention. She threw a telephone. She then threw a chair that struck another security officer, Jerry Bean. After the chair hit Officer Bean, Officer Hanvelt placed Defendant in handcuffs, but she was able to slip out of them. Officers Hanvelt and Bean then put Defendant on the bed in her room, and Officer Hanvelt stationed himself outside in the hallway.[3]

Sometime later, Officer Bean asked Officer Hanvelt to help him resolve a "glitch" on the computer in the security office. Defendant seemed calm at that time, so Officer Hanvelt left his position outside her room. Once he got into the security office and his back was to the door, he "heard Officer Bean say, 'There she goes.'" Both officers then joined other hospital personnel in pursuing Defendant, who was running from her room.

While Defendant was fleeing, Victim, a housekeeper for hospital, was working by her cleaning cart, which was stationed outside a set of double doors that separated two emergency rooms. Victim moved away from her cart toward these doors. Seconds later, Defendant—who was still running with hospital personnel in pursuit—collided with Victim, pushing Victim ahead of her through the double doors and down onto the floor. Victim testified: "I heard somebody say, 'Catch her.' And the minute I turned my head around, I flew out the door." Victim suffered a broken pelvic bone in the collision.

## Analysis

The State's amended information charged Defendant with violating section 565.070 by "recklessly caus[ing] physical injury to [Victim] by running in [hospital] and knocking [Victim] down." Security camera footage (without audio) of Defendant's collision with Victim was admitted into evidence without objection as State's Exhibit 1. Defendant does not dispute that Victim was physically injured or that the collision was the cause of Victim's injury. Her only claim is that the evidence adduced at trial was insufficient to prove that she was acting "recklessly." In support of that claim, Defendant argues that

> the surveillance video in State's Exhibit 1 clearly shows [Victim] standing by her cleaning cart until just moments before [Defendant] comes into view near the doors, at which time [Victim] ran from her cart to the doors in an apparent effort to block [Defendant]'s way, placing herself in [Defendant]'s path just moments before [Defendant] reached the doors.

The argument is unavailing for several reasons. First, it infers a purpose for Victim's movements that is inconsistent with Victim's testimony and the trial court's judgment. Further, in determining whether sufficient evidence proved that Defendant was reckless, we must initially focus on *Defendant's* behavior, not the behavior of Victim. *See State v. Bruce,* 53 S.W.3d 195, 199 (Mo.App. W.D.2001). Finally, by looking exclusively at Victim's behavior, Defendant ignores a critical step in asserting a proper insufficient-evidence claim: reciting the evidence favorable to the verdict. *See State v. Finch,* 398 S.W.3d 928, 929 (Mo.App. S.D.2013).[4] As a result, her argument "has no persuasive force because it provides no logical support

---

**3.** Defendant was also given a couple of sedatives. There is no indication in the record that Defendant ever entered a plea of not guilty by reason of mental disease or defect. Any effect that the medications administered to Defendant and/or her state of mental health might have had on her ability to consciously consider and assess risk is not an issue raised in this appeal.

**4.** As set forth in *Finch,* an insufficient-evidence claim involves the following sequential steps:

for Defendant's insufficient-evidence claim." *State v. Massa,* No. SD31795, 410 S.W.3d 645, 660, 2013 WL 3422895, at *12 (Mo.App. S.D. July 9, 2013); *see also State v. Williams,* 277 S.W.3d 848, 853 (Mo.App. E.D.2009) ("[T]he Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary").

 "As a general rule, '[d]irect proof of mental state in a criminal case is seldom available and such intent is usually inferred from circumstantial evidence.' " *State v. Deckard,* 18 S.W.3d 495, 502 (Mo. App. S.D.2000) (quoting *State v. Johnson,* 770 S.W.2d 263, 267 (Mo.App. W.D.1989)). Here, circumstantial evidence supporting the trial court's determination that Defendant acted recklessly included her resistance to detention—which involved throwing a telephone and a chair at hospital security officers; her running through hospital corridors; and her failure to stop after colliding with Victim.[5]

 The trial court was entitled to rely on this evidence in concluding that Defen-

dant acted recklessly, and it was sufficient to prove that Defendant consciously disregarded the risk of injury to others that might result from her aggressive attempts to resist hospital personnel.[6] Defendant's point is denied, and the judgment of conviction and sentence is affirmed.

JEFFREY W. BATES, P.J., and GARY W. LYNCH, J., concur.

---

1. Identify a challenged factual proposition needed to sustain the conviction;
2. Identify all favorable evidence in the record tending to prove that proposition; and
3. Show why such evidence, when considered along with its reasonable inferences, is so non-probative that no reasonable factfinder could believe the proposition.

*Id.* at 929.

5. Contrary to Defendant's arguments, evidence of Defendant's mental state " 'may be determined from evidence of [her] conduct *before* the act, the act itself and from the defendant's *subsequent* conduct.' " *Deckard,* 18 S.W.3d at 502 (quoting *Johnson,* 770 S.W.2d at 267) (emphasis added).

6. The handful of cases Defendant cites are inapposite. *See State v. Whalen,* 49 S.W.3d 181, 182–83 (Mo. banc 2001) (reversing conviction for first-degree assault because evi-

dence was insufficient to prove defendant acted *purposefully* ); *State v. Burton,* 370 S.W.3d 926, 929 (Mo.App. E.D.2012) (*affirming* conviction for third-degree assault of a law-enforcement officer where defendant was found to be reckless by leading state trooper on a foot chase through "wet, muddy conditions, over three fences, and into a thicket"); *State v. Howell,* 143 S.W.3d 747, 752–53 (Mo.App. W.D.2004) (*affirming* conviction for third-degree assault where defendant *did not dispute that he was reckless* or that the victim suffered injury, but did dispute causation); *State v. McGuire,* 924 S.W.2d 38, 40 (Mo.App. E.D. 1996) (reversing conviction for third-degree assault of a law enforcement officer where the issue was not whether defendant recklessly caused injury, but rather whether defendant *purposefully* placed police officer in *apprehension* of immediate physical injury).