KURT S. ODENWALD, Judge
Introduction
Gregory Bryant Jones ("Jones") appeals from the judgment of the trial court, entered after a jury convicted him on two counts of first-degree statutory sodomy. On appeal, Jones raises three points. First, Jones contends that the trial court erred in admitting Jones's prior convictions as propensity evidence without first balancing whether the probative value of such evidence was outweighed by the danger of unfair prejudice. Second, Jones argues that the trial court's application of Missouri Constitution Article I, Section 18(c) (" Article I, Section 18(c)") to his trial violated the constitutional prohibition on ex post facto laws. Third, Jones asserts that the trial court improperly limited his cross-examination of the State's witnesses.
Because Article I, Section 18(c) does not require the trial court to conduct any balancing test of probative value versus prejudice, and because Article I, Section 18(c) sets forth an evidentiary procedural rule that was prospectively applied to Jones's trial, the trial court did not err in admitting Jones's prior convictions as propensity evidence. Additionally, Jones waived his claim of trial-court error regarding the limits placed on his cross-examination of *4 the State's witnesses, and we decline plain-error review. We affirm.
Factual and Procedural History
The State charged Jones with two counts of first-degree statutory sodomy for improperly touching Victim, his step-granddaughter, sometime between September 2001 and 2003. Jones was convicted in 1968 of forcible rape and in 1975 of attempted rape. The State sought to submit Jones's prior convictions as propensity evidence under Article I, Section 18(c). Jones moved to exclude his prior convictions from evidence, arguing that the probative value from the convictions was substantially outweighed by the danger of unfair prejudice. Specifically, Jones claimed that his prior convictions lacked any probative value because they were remote in time and dissimilar to statutory sodomy. Jones also maintained that applying Article I, Section 18(c) to his trial violated the constitutional prohibition on ex post facto laws because it was enacted after he allegedly sodomized Victim. The trial court denied Jones's motion, finding that Article I, Section 18(c) was procedural in nature and did not contravene the constitutional prohibition on ex post facto laws. The trial court did not, however, determine whether the probative value of Jones's prior convictions was substantially outweighed by the danger of unfair prejudice. Instead the trial court found that Jones's prior convictions "will be admitted for purposes of propensity, and that's pursuant to the Missouri Constitution." The case proceeded to a jury trial.
Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. Sometime between 2001 and 2003, Victim's family moved into Jones's residence. Jones was Victim's step-grandfather. Victim, at the time of the charged conduct, was around ten years old. While living with Jones, Victim experienced two incidents of sexual abuse.
The first incident occurred when Victim was walking up the stairs to her bedroom. Jones stopped Victim, informing her that he had yet to receive a goodnight kiss. Jones kissed Victim, inserting his tongue into her mouth. Then, Jones grabbed Victim's hand and placed it directly on his penis, which was exposed through his unbuttoned pajama pants. Victim described the experience as "kind of scary" and that she "was really kind of lost."
The second incident occurred in Victim's bedroom after she had finished showering. Victim, wrapped in a towel, entered her bedroom. Jones followed her into the bedroom, blocking the door. Jones instructed Victim that he needed to check her body. Placing Victim on the bed, Jones spread Victim's legs, moved her towel, and exposed her vagina. Jones then placed his finger inside Victim's vagina, moving it in and out for a few minutes. Describing the experience, Victim recalled that it was "really uncomfortable" and that she "didn't know what to think of it. I just had a feeling that something wasn't-something wasn't right but-that's my grandpa."
Victim did not report the abuse when it occurred. Shortly thereafter, Victim's family moved out of Jones's residence. After moving, Victim suppressed the sexual abuse from her memory.
Years later Victim temporarily moved into Jones's residence for a week, Afterwards, Victim claimed that she began experiencing horrific flashbacks and nightmares of the abusive events. Eventually, these flashbacks and nightmares caused Victim to tell her Mother and Stepfather about the two instances of abuse. Victim's parents alerted the authorities, and Jones was taken into custody.
*5 At trial, the State read into evidence Jones's prior convictions for rape and attempted rape. Jones renewed his previous objections, but was overruled. Specifically, the State read the following to the jury: "[O]n December 18, 1968, [Jones] was found guilty of the felony of forcible rape in the Circuit Court of the City of St. Louis[.] ... And on May 20, 1975, [Jones] was found guilty of the felony of attended [sic] rape in the Circuit Court of the City of St. Louis[.]"
During trial, Jones cross-examined Victim about her claims that Stepfather physically abused her and questioned Stepfather about his relationship with Jones. However, the trial court limited Jones's cross-examination of Victim by disallowing use of certain text messages sent by Victim and by precluding Victim from commenting on the relationship between Stepfather and Jones. Further, the trial court limited Jones's cross-examination of Stepfather by barring questions about Stepfather's prior conviction for assault and his purported apology to Victim for physically abusing her.
The jury found Jones guilty on both counts of first-degree statutory sodomy. Jones moved for a new trial, claiming that the trial court erred in admitting evidence of his prior crimes and in limiting his cross-examination of Victim and Stepfather, The trial court denied Jones's motion. After finding that Jones was a persistent sexual offender, the trial court sentenced Jones to thirty years, without the possibility of parole, on each count. The trial court ordered the counts to run concurrently. This appeal follows.
Points on Appeal
Jones raises three points on appeal. Jones first contends that the trial court erred in admitting Jones's prior convictions as propensity evidence without conducting the balancing test required by Article I, Section 18(c). Jones proffers that a properly conducted balancing test would reveal that the probative value of his prior convictions was far exceeded by the danger of unfair prejudice. In his second point, Jones maintains that the application of Article I, Section 18(c) to his trial violated the state and federal constitutional bans on ex post facto laws. Finally, Jones argues that the trial court improperly limited his cross-examination into the biases of the State's witnesses.
Discussion
I. Point One-No Balancing Test Required Under Article I, Section 18(c)
A. Standard of Review
The trial court has broad discretion in determining whether to admit or exclude evidence at trial, and appellate courts review such evidentiary rulings for an abuse of discretion, State v. McBenge, 507 S.W.3d 94, 112 (Mo. App. E.D. 2016). "A trial court abuses its discretion when its ruling 'is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.' " Id. (quoting State v. Hood, 451 S.W.3d 758, 765 (Mo. App. E.D. 2014) ). However, Jones's point necessitates an interpretation and application of Missouri rules of evidence, as derived from statutes, the common law, and the Constitution. State v. Walkup, 220 S.W.3d 748, 757 (Mo. banc 2007). The interpretation and application of rules of evidence are questions of law that this court reviews de novo. See State v. Taylor, 298 S.W.3d 482, 492 (Mo. banc 2009).
B. No Balancing Test Required
Jones initially argues that the trial court erred by not conducting an express balancing test before admitting Jones's *6 prior convictions as propensity evidence under Article I, Section 18(c). Jones reasons that a properly conducted balancing test would reveal that the probative value of his prior convictions was substantially outweighed by the danger of unfair prejudice, thereby precluding the admission of his prior convictions.
In 2014, Missouri voters amended the Missouri constitution to enact a new rule of evidence in criminal cases. State ex rel. Tipler v. Gardner, 506 S.W.3d 922, 924 (Mo. banc 2017) (referencing Mo. Const. art. I, sec. 18(c) ); State v. Rucker, 512 S.W.3d 63, 67 (Mo. App. E.D. 2017). This amendment, Article I, Section 18(c), effective on December 4, 2014, provided:
Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.
Mo. Const. art. I, sec. 18(c). This amendment expressly allows the admission of "relevant evidence of prior criminal acts" to corroborate the victim's testimony or to demonstrate the defendant's propensity to commit the charged crimes, in sex-crime prosecutions involving a minor victim. See State v. Thigpen, ED103992, --- S.W.3d ----, ----, 2017 WL 3388977, at *5 (Mo. App. E.D. Aug. 8, 2017) (motion for rehearing or transfer to the Supreme Court pending); Rucker, 512 S.W.3d at 68-69. Thus, evidence of relevant, criminal acts is admissible to establish defendant's propensity to commit the charged crimes. However, the evidence of prior criminal acts must be both logically and legally relevant. Thigpen, --- S.W.3d at ---- - ----, 2017 WL 3388977, at *7-8.
By the plain language of Article I, Section 18(c), only "relevant evidence of prior criminal acts" is admissible as propensity evidence. Under the amendment, evidence is logically relevant if "it has any tendency to make the existence of a material fact to the case more or less probable than it would be without such evidence." Thigpen, --- S.W.3d at ---- - ----, 2017 WL 3388977, at *7-8. "This is a very low-level test that is easily met." Id. (quoting State v. Vorhees, 248 S.W.3d 585, 591 (Mo. banc 2008) ). Indeed, "[c]rime statistics readily demonstrate that commission of a prior crime by a defendant is logically relevant to the issue of whether the defendant committed the crime charged simply because [recidivism] statistics demonstrate that prior offenders commit more crimes than persons who have not previously committed a crime." Id. (quoting Vorhees, 248 S.W.3d at 591 ). Thus, propensity evidence-evidence of related past criminal acts committed by the defendant-can be logically relevant. Id.
Jones reasons that his prior convictions for attempted rape and rape are not logically relevant to prove that he committed statutory sodomy because of the passage of time and the dissimilarity between the prior convictions and the charged crime. We disagree. First, the remoteness in time of the prior misconduct does not eliminate its logical relevancy; instead, it generally affects the weight given to the evidence. Id. at ----, 2017 WL 3388977, at *10.[1]
*7 While events occurring closer in time may have more probative value and can be given more weight by the jury in its deliberations, events remote in time retain sufficient probative value to meet the low threshold required by the logical-relevance test. Id. Second, we reject Jones's argument that the circumstances of his prior convictions were so dissimilar to statutory sodomy as to eliminate their probative value. Although first-degree statutory sodomy and rape (and attempted rape) are indeed different crimes containing separate and distinct elements, both involve impermissible physical and harmful contact of a sexual nature with the victim. Contrary to Jones's contentions, impermissible hand-to-genital contact is not of a complete and distinct nature than genital-to-genital misconduct. On the limited record provided, we do not find that the crimes are so dissimilar as to eliminate their probative value at trial.
Although the prior convictions were logically relevant, i.e., the prior convictions tended to prove that the defendant was more likely to commit statutory sodomy, we must also determine if the convictions were legally relevant. Traditionally, evidence was "considered to be legally relevant if its probative value outweighs its prejudicial effect." McBenge, 507 S.W.3d at 113. However, as determined by our Court in Thigpen and Rucker, the passage of Article I, Section 18(c) altered this traditional balancing test in crimes of a sexual nature committed against minor victims. Thigpen, --- S.W.3d at ----, 2017 WL 3388977, at *8 ; Rucker, 512 S.W.3d at 69. Indeed, the constitutional amendment provides that the trial court "may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Rucker, 512 S.W.3d at 69 (quoting Mo. Const. art. I, sec. 18(c) ). In interpreting the constitutional provision, we have determined that "[t]he General Assembly's use of the word 'may' indicates that the court has the discretion to exclude such evidence in these circumstances, but it is not obligated to do so." Id. As a result, even if the probative value of Jones's prior convictions was substantially outweighed by the danger of unfair prejudice, a trial court is not required to exclude its admission. Thigpen, --- S.W.3d at ----, 2017 WL 3388977, at *8 ; Rucker, 512 S.W.3d at 69. The constitutional amendment dispensed with the requirement that the trial court conduct any balancing analysis of probative value to prejudice. The trial court may, at its discretion, admit evidence of prior misconduct even if the danger of unfair harm from such evidence substantially outweighs its probative value. For evidence falling within the purview of Article I, Section 18(c), the trial court may, but is not required to , exclude evidence that traditionally would lack legal relevance.
The record shows that Jones's prior convictions are logically relevant, and that the trial court exercised its discretion in choosing not to exclude the evidence for lack of legal relevance. Because the trial court need not conduct a balancing test under Article I, Section 18(c), Jones's argument that the trial court must make an express balancing test on the record and issue requisite findings before admission of the propensity evidence is without merit. See Thigpen, --- S.W.3d at ----, 2017 WL 3388977, at *8 ; Rucker, 512 S.W.3d at 69. Similarly, because the trial court, in its discretion, may admit evidence under Article I, Section 18(c) that is substantially *8 more prejudicial than probative, Jones's argument that the trial court erred in admitting propensity evidence that was substantially more prejudicial than probative is also necessarily without merit. See Thigpen, --- S.W.3d at ----, 2017 WL 3388977, at *8 ; Rucker, 512 S.W.3d at 69. Point One is denied.
II. Point Two-No Ex Post Facto Violation
Jones's second point on appeal contends that the trial court's application of Article I, Section 18(c) to his trial was a retrospective application of law that violated the prohibition against ex post facto laws contained in both the federal and Missouri constitutions. See U.S. Const. art. I, secs. 9-10; Mo. Const. art. I, sec. 13. We review de novo whether a defendant's constitutional rights have been violated. State v. Sisco, 458 S.W.3d 304, 312-13 (Mo. banc 2015).
At oral argument, Jones concedes that, since the filing of his brief, this Court has determined that the application of Article I, Section 18(c) to trials conducted after the effective date of the amendment is not a constitutional ex post facto violation. See Thigpen, --- S.W.3d at ----, 2017 WL 3388977, at *7 ; Rucker, 512 S.W.3d at 68.
Both the federal and Missouri constitutions prohibit ex post facto laws. See U.S. Const. art. I, sec. 10; Mo. Const. art. I, sec. 13. As applied here, ex post facto concerns occur when the State alters the legal rules of evidence to authorize the defendant's conviction with less, or different, evidence than the law required at the time of the offense's commission. See State ex rel. Tipler, 506 S.W.3d at 926 (referencing Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) ); State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011). However, "[i]t is now well settled that statutory changes in the mode of trial or rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited [by the Constitution]." State v. Stevens, 757 S.W.2d 229, 231 (Mo. App. E.D. 1988) (quoting Beazell v. Ohio, 269 U.S. 167, 170, 46 S.Ct. 68, 70 L.Ed. 216 (1925) ); see State v. Belk, 759 S.W.2d 257, 259 (Mo. App. E.D. 1988) (stating that the prohibition on ex post facto laws "does not apply to changes in modes of procedure which do not affect matters of substance."). Further, procedural rules that apply prospectively do not constitute impermissible ex post facto laws. See Rucker, 512 S.W.3d at 68.
In 2014, Missouri voters amended the Missouri constitution, enacting the evidentiary rule embodied in Article I, Section 18(c). State ex rel. Tipler, 506 S.W.3d at 924. The amendment became effective on December 4, 2014. Id. By its plain language, Article I, Section 18(c), applies to "prosecutions for crimes of a sexual nature involving a victim under eighteen years of age[.]" (Emphasis added). Our Supreme Court, in State ex rel. Tipler, determined that Article I, Section 18(c) pertains to prosecutions, not the underlying substantive conduct that is the focus of the prosecution. Id. at 924-25. Accordingly, the Supreme Court held that Article I, Section 18 is to be applied prospectively to prosecutions. Id. The amendment applies to any trials beginning on or after December 4, 2014. Id. at 928.
This Court also has previously held that "[i]t is an exercise of the power of the state to provide methods of procedure in [its] courts." Rucker, 512 S.W.3d at 68 (quoting State ex rel. Tipler, 506 S.W.3d at 927 ). Rules of evidence are procedural rules of court that guide the litigants as to the admissibility of evidence. See State ex rel. Tipler, 506 S.W.3d at 925 ;
*9 Stiers v. Dir. of Revenue, 477 S.W.3d 611, 618 (Mo. banc 2016). "No vested right of a defendant is disturbed by laws affecting the methods of court procedure." Rucker, 512 S.W.3d at 68. Here, Jones's trial was conducted in June 2016, well after the effective date of the constitutional provision. Jones did not have a vested right in the method of court procedure employed. See id. Accordingly, the trial court's application of Article I, Section 18(c) during Jones's trial did not violate the constitutional prohibition on ex post facto laws. See Thigpen, --- S.W.3d at ---- - ----, 2017 WL 3388977, at *6-7 ; Rucker, 512 S.W.3d at 68. Point Two is denied.
III. Point Three-Waiver of Claim Regarding Cross-Examination
In Point Three, Jones contends that the trial court improperly limited his cross-examination of Victim and Stepfather when it prevented him from asking questions regarding the biases of Victim and Stepfather. Specifically, Jones alleges four particular instances of trial-court error during his cross-examination of Victim and Stepfather: (1) the trial court precluded Jones from asking Stepfather if Stepfather had a prior conviction for assault; (2) the trial court did not allow Jones to ask Stepfather if Stepfather apologized to Victim for physically abusing her; (3) the trial court disallowed the use of Victim's text messages that alleged prior abuse by Stepfather; (4) the trial court barred Jones from asking Victim about the relationship between Stepfather and Jones. On appeal, the State counters that Jones did not preserve his claims of error as to the trial court's evidentiary rulings because he failed to make an adequate offer of proof.
Where the State's objection to the proffered evidence is sustained, the defendant "must make an offer of proof during trial to preserve the matter for appellate review," State v. Nettles, 481 S.W.3d 62, 71 (Mo. App. E.D. 2015). "Courts strictly apply this rule because trial judges should have the opportunity to reconsider their prior rulings against the backdrop and in light of the circumstances that exist when the actual evidence is adduced." Id. An offer of proof establishes: "1) what the evidence will be; 2) the purpose and object of the evidence; and 3) each fact essential to establishing the admissibility of the evidence." State v. Tisius, 92 S.W.3d 751, 767 (Mo. banc 2002). However, a party is excused from the obligation to make an offer of proof when (1) "there is a complete understanding based on the record of what the excluded testimony would have been; (2) the objection relates to a category of evidence rather than to specific testimony; and (3) the record reveals that the evidence would have helped its proponent." Nettles, 481 S.W.3d at 71. The exception to the rule requiring the proponent of evidence to make an offer of proof is applied very narrowly. State v. Peters, 186 S.W.3d 774, 781 (Mo. App. W.D. 2006). We will review the issue of waiver to each claim individually.
A. Stepfather's Prior Conviction
During direct examination, Stepfather admitted that he had a third-degree-assault conviction. On cross-examination, Defense counsel asked Stepfather, "[Y]ou have a prior conviction for assault?" Stepfather answered affirmatively, The State objected based on relevancy, which the trial court sustained. Jones then ended his questioning on this issue.
Stepfather had already testified under direct examination that he had pled guilty to third-degree assault. If Jones's claim of error is that the trial court prevented him from further exploring the circumstances of Stepfather's conviction, the record shows that Jones never actually asked any questions about the circumstances of Stepfather's conviction. Instead, Jones abruptly *10 ceased questioning Stepfather after the State's objection to his specific question. The questions Jones would have asked, and the answers Jones would have received in response, are not in the record in any manner.[2] Jones asks us to speculate about the circumstances surrounding Stepfather's assault conviction to find bias; we cannot and will not do so. Jones did not preserve this claim for appellate review. See Nettles, 481 S.W.3d at 71.
B. Stepfather's Apology to Victim
Jones also complains that he was not permitted to question Stepfather if Stepfather recalled apologizing to Victim about his physically abusive conduct. At trial, Jones did not submit an offer of proof, Jones also did not establish for what purpose he was attempting to admit the evidence. Instead, Jones immediately moved to other avenues of questioning. On appeal, Jones now asserts that the testimony potentially elicited from this question would have revealed Stepfather's bias against Jones.
As stated previously, Jones made no offer of proof. Neither are we persuaded that an exception to the requirement of an offer of proof applies here. See Nettles, 481 S.W.3d at 71. We do not have a complete understanding from the record of what the excluded testimony would reveal. We are not provided with any of the circumstances surrounding the purportedly abusive conduct or subsequent apology. Further, the State's objection did not relate to a category of evidence, but instead it was directed to a specific question. Finally, we are unsure if a positive answer to the question-whether or not Stepfather recalled if he apologized for abusing Victim-would necessarily have helped Jones without more information surrounding the context of the abuse or the apology. We find that Jones waived this contention for appeal.
C. Victim's Text Messages
Jones sought to admit evidence that Victim texted her sister about being physically abused by Stepfather. The State objected on grounds that the text messages were not relevant. During trial, Jones did not specifically identify the purported content of pertinent text messages; the only specific allegation made by Jones is that Victim texted that she was physically abused by Stepfather. The record shows that Jones, on cross-examination, asked Victim if she informed Sister about Stepfather's abuse:
Q: Do you recall telling your sister about being choked by your father?
A: Yes.
Q: How many times?
A: It was twice.
Besides the allegation of physical abuse, which was admitted into evidence through Victim's testimony, Jones does not present, either to the trial court or on appeal, any other specific statements contained with the text messages. Without the contents of the text messages or additional information about the content of the text messages, we are unable to determine their relevancy or if the text messages would otherwise be admissible. To preserve a point for appeal and to enable effective appellate review, the proponent of *11 the evidence must present the specific evidence in sufficient detail for the trial court, and the reviewing court, to consider its admissibility. See State v. Woods, 357 S.W.3d 249, 253 (Mo. App. W.D. 2012) (insufficient to imply or vaguely describe proposed evidence to preserve for appeal). The proponent of the evidence cannot stand on vague allegations that the evidence, if admitted, would reveal bias, without establishing how it would do so. See id.; State v. Comte, 141 S.W.3d 89, 93 (Mo. App. S.D. 2004) (conclusory statements by counsel not sufficient to preserve point). Without the necessary information, we cannot determine that the trial court erred in excluding the text messages. Again, we find that Jones waived his claim of error for appeal.
D. Victim's Characterization of Stepfather's Relationship with Jones
On cross-examination, Jones asked Victim to describe Stepfather's relationship with Jones, The State made a hearsay objection, which was sustained. Again, the record does not reveal the basis for which Jones sought to admit this testimony, Jones's response to the State's hearsay objection, or give any indication as to what the purported testimony would contain. On appeal, Jones does not even address the State's hearsay objection, instead arguing only that Victim's testimony was relevant. Presuming it is possible to find a hearsay exception, Jones never identifies any exception before the trial court or on appeal, thereby forcing us to act as his advocate. It is not an appropriate function for an appellate court to act as advocate for the parties. State v. Massa, 410 S.W.3d 645, 657 (Mo. App. S.D. 2013). Jones failed to preserve this claim on appeal.
E. We Decline to Exercise Plain-Error Review
Because of Jones's failure to preserve his claims of error, we may, but are not required to, review his third point for plain error under Rule 30.20.[3] Nettles, 481 S.W.3d at 72 ; see Chambers, 234 S.W.3d at 512 (appellate courts have complete discretion on whether to review an unpreserved matter for plain error). "Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved." State v. White, 247 S.W.3d 557, 561 (Mo. App. E.D. 2007). Indeed, the plain-error rule "should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." Id. In deciding whether to exercise our discretion to provide plain-error review, we look to determine whether on the face of appellant's claim substantial grounds exist for believing that the trial court committed plain error, resulting in manifest injustice or miscarriage of justice. Id. Because we are prevented from effectively reviewing Jones's evidentiary claims and because our review of the record before us indicates that no manifest injustice has occurred, we decline to exercise plain-error review. Point Three is denied.
Conclusion
The judgment of the trial court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri B. Sullivan, J., concurs.

Jones also was incarcerated for extended periods between his prior convictions and 2001-2003. The record is not clear on how long Jones was out of prison before Jones allegedly sodomized Victim.

Before trial, the State moved in limine to exclude evidence that Stepfather beat his own stepson (a third party unassociated with the trial) with a belt. It is not clear from the trial transcript whether the question on cross-examination pertained to the episode involving Stepfather striking a third party with a belt, the conviction mentioned on direct, or some other conviction. Regardless, Jones did not timely renew the arguments he made in limine. Arguments made by the parties in limine preserve nothing for appeal and must be renewed during trial. State v. Chambers, 234 S.W.3d 501, 511 (Mo. App. E.D. 2007).

All rule references are to Mo. R. Crim. P. (2016).