DANIEL E. SCOTT, J.
Mark Harris appeals from his bench-tried conviction and probation for misdemeanor stealing. He challenges the admission of other-crimes testimony and the sufficiency of the evidence to sustain his conviction. We affirm.
Background
Harris advertised that he crafted and sold custom wood furniture. He quoted a Ms. Poole $600 for a custom bed, including $400 up front which Ms. Poole paid. The estimated delivery date came and went with no bed and Harris offering serial lies and excuses for non-delivery-the bed got damaged and needed repairs; it had been stolen; Harris was tied up at his other job; his friend died in Texas; Harris and his wife were hurt in a car wreck; his wife was in critical condition for a couple weeks; she eventually died. Ms. Poole offered to pick up the bed from Harris's shop, but he declined. Harris never delivered the bed and did not voluntarily refund Ms. Poole's money. Harris was charged with stealing by deceit, waived a jury, and was tried by the court.
*515 The state's trial witnesses included Ms. Poole and, over Harris's objection, a Mr. Hensley. Mr. Hensley testified how he had seen Harris's ads and paid him to build a custom bed during the same timeframe as Ms. Poole. Harris never delivered Mr. Hensley's bed; offered similar excuses and lies as told to Ms. Poole; sent Mr. Hensley pictures, purportedly of his completed bed, but which Harris actually had pulled from an unrelated woodshop's website; blocked Mr. Hensley's communications; and would not voluntarily refund Mr. Hensley's money. These events had given rise to a separate criminal charge against Harris.
Harris testified on his own behalf, admitting that he had lied to Ms. Poole[1] and that he made her go through a credit-card dispute process rather than voluntarily refunding her money. At the conclusion of the bench trial, the court found Harris guilty of stealing by deceit.
Hensley Testimony (Point 1)
Harris claims the trial court abused its discretion in admitting Mr. Hensley's testimony. Generally, it is unconstitutional to admit evidence of a defendant's other criminal acts purely to show criminal propensity. State v. Vorhees , 248 S.W.3d 585, 586 (Mo. banc 2008).[2]
Yet, as Vorhees also notes, this ban is far from absolute. Exceptions " 'are as well established as the rule itself' and include: (1) motive; (2) intent; (3) the absence of mistake or accident...." Id . at 588 (quoting State v. Sladek , 835 S.W.2d 308, 311 (Mo. banc 1992) ). Stealing-by-deceit cases illustrating the intent exception include State v. Tidlund , 4 S.W.3d 159, 164-65 (Mo.App. 1999), and State v. Inscore , 592 S.W.2d 809, 811-12 (Mo.App. 1980).
Similarly, Mr. Hensley's testimony was admissible to show Harris's intent to deceive Ms. Poole. To prove stealing by deceit, the prosecution had to show that Harris "had the intent to cheat or defraud at the time he made the false representation to cause the victim to part with his or her money." Tidlund , 4 S.W.3d at 164. Otherwise, Harris may have committed a breach of contract, but not a criminal act. Id . Indeed, that was Harris's defense at trial-that this was merely a civil case, a contract dispute, but no crime.
Intent "is rarely open to direct proof," but can be established circumstantially. Inscore , 592 S.W.2d at 811.
In particular, to prove intent to defraud based upon a promise, the State may introduce evidence of similar incidents whereby the defendant obtained money from other victims by making some sort of promise. The theory which underlies admission of such evidence is that if a defendant consistently makes the same promise to a number of victims and, after obtaining the victim's money or goods, consistently fails to perform, it may be fairly inferred from the pattern of behavior that no mischance could reasonably explain all the failures of performance. Thus, the inference is raised that the defendant must have intended not to perform in any instance and particularly in the situation in which he has been charged.
Id .[3] The trial court did not abuse its discretion in admitting Mr. Hensley's testimony. Point 1 fails.
*516 Sufficiency of Evidence (Point 2)
Harris argues that he may have breached a contract, but there was insufficient proof of his criminal intent to deceive. In reviewing this claim, we consider whether there was evidence sufficient for a reasonable factfinder to have found Harris guilty beyond a reasonable doubt. See Tidlund , 4 S.W.3d at 160. In so doing, we view the record and inferences most favorably to the conviction and reject all contrary evidence and inferences. Id . Analytically, therefore, Point 2's challenge involves three sequential steps:
1. Identify a challenged factual proposition-here, Harris's intent to deceive-that is needed to sustain the conviction;
2. Identify all evidence of record that tends to show that Harris did intend to deceive Ms. Poole;
3. Then show why such evidence and its reasonable inferences are so non-probative that no reasonable factfinder could believe that Harris intended to deceive Ms. Poole.
See State v. Light , 407 S.W.3d 135, 137 n.4 (Mo.App. 2013) ; see also State v. Massa , 410 S.W.3d 645, 660 (Mo.App. 2013).
Harris eschews this approach, instead focusing heavily, if not exclusively, on evidence or inferences that favor him. His complete disregard for the steps above or our standard of review so weakens his arguments analytically as to strip them of any persuasive value. Light , 407 S.W.3d at 137-38. Ex gratia review, some of which overlaps with our Point 1 analysis, confirms that Point 2 lacks merit. Point denied. Judgment and conviction affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCURS
JEFFREY W. BATES, J.-CONCURS

Including that his "wife died" story was a lie. Harris was not married.

Superseded in part by constitutional amendment as noted in State v. Rucker , 512 S.W.3d 63, 67 & n.5 (Mo.App. 2017).

The prosecutor so argued in offering Mr. Hensley's testimony, that it fell
under an exception, and that exception would be just that the statement may present evidence of similar instances where the accused consistently made same or similar promises, and this is in relation specifically to fraud cases. I'm reading here from State v. Tidlund. And basically the reasons they stated that one instance of fraud is very hard to prove as such that it's necessary to cite other cases of a similar modus operandi.
Harris now seizes on the prosecutor's mention of "similar modus operandi" (our emphasis), incorrectly arguing that Tidlund and like cases are no longer good law because Vorhees , 248 S.W.3d at 588-92, abrogated the "signature modus operandi exception" (also our emphasis). Vorhees struck down only "the signature modus operandi exception, for corroboration," not the intent or other "well-established" exceptions which Vorhees rightly treated as distinct and different. See Vorhees , 248 S.W.3d at 588 ("In addition to these 'well-established' exceptions, the signature modus operandi exception, for corroboration, has emerged...."). Vorhees simply does not impact the intent exception at issue here or in Tidlund and Inscore .